**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**PAMELA K. BURGESS,**

        **Plaintiff,**

**v.**                                      **Case No.  8:06-cv-1212-T-24TBM**

**MICHAEL J. ASTRUE[1],
Commissioner of the United States
Social Security Administration,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.[2]  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

**I.**

Plaintiff was forty-one years of age at the time of her administrative hearing in January 2006.  She stands 5', 7" tall and weighed 130 pounds.  Plaintiff has a seventh grade

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  See also M.D. Fla. R. 6.01(c)(21).

education and no vocationally relevant past work.  Plaintiff applied for Supplemental Security

Income payments in November 2003,[3] alleging disability as of June 15, 2002, by reason of

arthritis and seizures.[4]  The Plaintiff's application was denied originally and on

reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an

Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel

and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.  In

essence, Plaintiff testified that she could no longer work at any job due to constant pain in her

hips, neck, back, knees, feet, and hands.  By her account, she is unable to stand long enough

to allow for work.  Plaintiff testified that she last worked about seven years prior boxing

bicycle parts.  The job consisted mainly of standing with some sitting.  She indicated that she

stopped working because she hurt too badly.  Plaintiff testified the pain in her hips and feet is

constant and she rates it at a level ten on a scale of one to ten with ten being the greatest pain.

Her hand pain is constant as well and she rates it at a level eight.  Her back pain is also

constant.  In 1996 or 1997 she had injections for pain relief in her back, neck, knees, and hips.

She also treats her pain with hot pads or cold packs a couple of times a week, and she soaks in

the tub everyday.  Plaintiff also suffers from migraine headaches three to four times a week.

The migraines make her ill and she has to lie down in the dark for relief.  Additionally, she

---

[3]The parties assert that Plaintiff filed applications for Supplemental Security income payments *and* Social Security disability benefits.  See (Docs. 14, 16).  A review of the record reveals an application under Title XVI only.  See (R. 44).  The ALJ addressed Plaintiff's claim under Title XVI and not under Title II.  See (R. 16, 212).

[4]The alleged onset date was amended to November 25, 2003.

experiences seizures four to six times a year and claims she is depressed. Plaintiff stated that she takes Lorcet, Xanax, Prozac and Tegretol for her conditions. She indicated that she could not afford any other type treatment.

As to her daily activities, Plaintiff testified that she stays in bed most of the day. She is only able to stay up for about thirty minutes to an hour before she must lie down again. She has trouble sleeping at night because of the pain and never gets a restful night of sleep. On a "bad day," she stays in bed all day. On a "good day," she may do the dishes or dusting but she has to take rest breaks and sit in a recliner or on the bed. Otherwise, Plaintiff does not do any housework, cleaning, cooking, laundry, or shopping and relies on family or her fiancé for help. She has more bad days than good days during the month. She occasionally requires assistance with her personal care such as bathing and dressing. According to Plaintiff, she does not drive, and she and her fiancé mainly stay home and sometimes go to dinner. She stated that she is unable to cut her own food or prepare meals. She has a five year old son who is with her a couple of times a week, but her fiancé or her daughter or mother cares for him during these visits because she cannot.

Plaintiff estimated that she can lift and carry only five pounds and she drops things. She can sit for fifteen minutes, stand for ten minutes, and walk a block. When she walks, she has a limp. A doctor has recommended she use a cane. Plaintiff complained that her severe back pain affects her ability to bend, pick up things from the ground, and kneel. She can not climb stairs. See Plaintiff's testimony (R. 213-35).

The ALJ also took testimony from Richard Baine, a vocational expert ("VE"), who testified upon an assumption of a person with Plaintiff's age, education, and work background

3

who could perform light work with no more than occasional postural activities and no exposure to heights or hazards. Upon this hypothetical, the VE opined that Plaintiff could perform work as an attendant, packer, and sorter. He opined that Plaintiff would still be able to perform this type work if she suffered roughly four to six seizures per year, even if it caused her to miss work or have to leave the workplace if the seizure occurred at work. Upon the added assumption that Plaintiff's testimony concerning her arthritic pain, the resulting limitations, and the time she must lie down was fully credible, the VE opined that there would be no full-time employment available to her. On questioning from Plaintiff's counsel, the VE opined that Plaintiff would be unemployable if she missed work three times a month because of her seizures and other physical problems. See VE's testimony (R. 238-40).

Also before the ALJ were medical records outlining the Plaintiff's medical history. They reflect complaints of pain in the back, hips, hands and legs, with impressions of osteoarthritis, occasionally rheumatoid arthritis. A neurological exam in November 2001 reflects an assessment for seizure disorder, probably idiopathic epilepsy since childhood, and generalized arthritis, as well as instructions for avoiding work in high places and near heavy machinery, and in a report September 19, 2000, there is reference to migraine headaches. (R. 175-179). Later records reflect complaints of anxiety. A variety of medications was prescribed for these conditions.

By his decision of February 21, 2006, the ALJ determined that while Plaintiff has severe impairments related to osteoarthritis and seizure disorder, she nonetheless had the residual functional capacity to perform a significant range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to

4

her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to

be not disabled.  (R. 16-24).  The Appeals Council denied Plaintiff's request for review, and

the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must

be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last

for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A

"physical or mental impairment," under the terms of the Act, is one that "results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  See

id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater,

84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and

demonstrate that he has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  Keeton

v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v.

Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises five claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  The ALJ failed to consider the combined effects of all impairments;

(2)  The ALJ erred in evaluating the Claimant's subjective complaints as her credibility finding is not based on substantial evidence;

6

(3)  The substantial evidence of the record does not support a finding that the Claimant can perform sustained work activities;

(4)  Since the testimony of the VE supports a finding that there is no work in the national economy upon a proper consideration of all of the Claimant's limitations, the Appeals Council should award benefits; and

(5)  The ALJ failed to even discuss, much less consider, the side effects from the Claimant's many medications on her ability to work, as required.

By her first claim, the Plaintiff argues that the ALJ failed to consider the combined effects of her rheumatoid arthritis, pain in her hips, knees, hands, feet, back and neck, her seizures, depression and headaches.  By this claim, the ALJ failed to consider the combined effect of each impairment, whether severe or non-severe, at each step in the sequential analysis.  (Doc. 14 at 4-7).

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling.  In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.  Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

The decision reflects that the ALJ recognized his obligation to consider all severe and non-severe impairments throughout the five-step analysis.  As acknowledged by the ALJ:

> A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities.  The Regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.

(R. 17).  Moreover, the decision reveals that the ALJ considered the record evidence regarding Plaintiff's arthritis and resulting pain in the hips, knees, hands, feet, back, and neck; seizures; depression; and headaches.[5]  Given that no treating, examining, or reviewing doctor opined as to Plaintiff's functional capacity,[6] the ALJ plainly considered the combined effect of the impairments when determining Plaintiff's residual functional capacity.  While the ALJ

---

[5]With regards to Plaintiff's claimed depression and migraine headaches, the ALJ found these impairments were non-severe as they did not cause more than minimal work limitations.  (R. 18).  Plaintiff does not separately challenge this finding.  Additionally, Plaintiff did not testify to limitations related to depression other than to state she is "depressed a lot."  (R. 222).  Although Plaintiff was prescribed Xanax and Prozac, she did not testify to any symptoms related to such.  As for her migraine headaches, as discussed more fully below, the record simply does not corroborate Plaintiff's allegations of experiencing disabling migraines three to four times a week.  As the ALJ indicated, there is no mention of headaches in Plaintiff's current treatment notes despite fairly regular visits to the doctor after her alleged onset date.  Upon my review of the record, Plaintiff was diagnosed with migraines in September 2000 (three years prior to her alleged onset date) and was prescribed Depakote.  See (R. 177-79).  Other than that one treatment note, I was unable to find any medical record mentioning migraines.  For these reasons, there was nothing in particular for the ALJ to consider with respect to these impairments in the remainder of the evaluation process and Plaintiff does not demonstrate otherwise on this appeal.

[6]As noted above, there is a reference in a neurological exam report in November 2001 that reflects an assessment for seizure disorder and generalized arthritis and instructions for avoiding work in high places and near heavy machinery.  (R. 176).  No other limitations were suggested.

8

might have evidenced this consideration more articulately throughout the sequential

evaluation, the Eleventh Circuit has held repeatedly that a finding such as this suffices in

evidencing consideration of the combined effects of a claimant's impairments.  See Wilson v.

Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); Jones v. Dep't of Health & Human

Servs., 941 F.2d 1529, 1533 (11th Cir. 1991); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th

Cir. 1986).  Plaintiff is not entitled to relief on this claim.

By her second claim, Plaintiff argues that the ALJ's reasons, if any, for discounting

her subjective allegations are not based on substantial evidence because the record evidence

corroborates her allegations regarding the pain in her lumbar spine, arthritis and various

musculoskeletal impairments, and seizures.  Plaintiff also argues that the ALJ's reason for

discounting her claim of debilitating migraine headaches, i.e., a lack of medical support, is

"not grounded in the evidence nor clearly articulated in the decision," particularly since she

testified she could not afford treatment.  Lastly, Plaintiff argues the ALJ erred by not allowing

corroborating testimony at the hearing and then ruling that Plaintiff was not credible.  By this

argument, Plaintiff contends that the ALJ failed to adequately develop the record because

without the corroborating testimony, he did not have all the facts necessary to properly assess

Plaintiff's credibility.  (Doc. 14 at 7-8).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed

by a three-part "pain standard" that applies when a claimant attempts to establish disability

through subjective symptoms.  By this standard, there must be evidence of an underlying

medical condition and either objective medical evidence that confirms the severity of the

alleged symptom arising from the condition or evidence that the objectively determined

medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1561-62 (1995).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale, 831 F.2d at 1012.

Here, the decision reveals that the ALJ recognized that this was a "pain" case as well as his obligation to consider the Plaintiff's subjective complaints to the extent that they were revealed by or reasonably consistent with the evidence, objective and otherwise.  See (R. 19-21).  By this evidence, the ALJ credited Plaintiff with osteoarthritis and resulting pain, but he rejected such pain as rendering the Plaintiff disabled from all work.  Thus, to the extent that Plaintiff complains that the ALJ failed to follow the applicable standard, the decision reflects otherwise.[7]  Moreover, the ALJ acknowledged with reasonable accuracy the full litany of Plaintiff's subjective complaints, including her testimony about the location, duration,

---

[7]Although the ALJ did not explicitly reference this Circuit's pain standard, he recognized and applied the similar standard, citing to SSR 96-7p and the regulatory standard at 20 CFR § 416.929 (R. 19-20), which discuss the consideration of a claimant's subjective allegations of pain.  Proper application of the ruling and regulatory standard will satisfy the "pain standard."  See Wilson, 284 F.3d at 1225-26.

frequency, and intensity of his pain and other symptoms, as well as the resulting limitations alleged.  See id. at 20-21.

Furthermore, the reasons articulated by the ALJ for discounting Plaintiff's claims of *disabling* pain and limitations are supported by the record.  In particular, the ALJ found that, with regards to Plaintiff's arthritis and musculoskeletal impairments, (1) the record failed to provide any objective medical evidence that Plaintiff's impairments were as severe as she alleged at the hearing, (2) the record failed to show that Plaintiff required any current hospitalizations, significant active treatment, or significant office care other than for routine maintenance, (3) Plaintiff was not receiving any specific physical treatment or therapy for pain, (4) the few specific physical evaluations in the record have not suggested any extensive restrictions, (5) there has been little objective testing performed despite Plaintiff's ongoing complaints of pain, and (6) the testing that has been performed has been within normal limits. (R. 20).  These reasons are rational and supported by the record.  Substantial evidence also supports the ALJ's rejection of Plaintiff's claim of debilitating migraines headaches and resulting limitations.  Notably, my review of the evidence revealed only one record documenting Plaintiff's migraine headaches and it is dated three years prior to her alleged onset date.[8]  See (R. 177-79).  Although Plaintiff was seen by a doctor during the two years

---

[8]In September 2000, Dr. Rafael Rodriguez noted "the patient also complains of headaches which have been present for more than a year, occurring once every two weeks, lasting for two or three days at a time, bi-temporally located, associated with nausea and vomiting, and she does have a strong family history of headaches in her mother and an aunt." (R. 177).  He assessed a seizure disorder and migraine headaches and prescribed Depakote. (R. 178-79).  A later report by this doctor reflected complaints concerning seizures but nothing about headaches.  (R. 175-76).

after her alleged onset date and was prescribed medication, the record is devoid of any

mention of migraines.  These treatment records also seriously undercut Plaintiff's argument

on the point that she could not afford treatment and thus her lack of the same should not

reflect adversely on her actual condition.  In any event, as noted, the only functional

limitations imposed by Dr. Rodriquez were for no work around high places and around heavy

machinery.  As the decision and the transcript from the administrative hearing reveal, these

limitations were an express part of the ALJ's residual functional capacity finding and his

hypothetical question to the VE.  Thus, to the extent that these conditions had functional

consequences, they were fully accepted by the ALJ and incorporated into his decision on

disability.

Finally, as for Plaintiff's contention regarding the refusal to permit witness

testimony, Plaintiff is correct that the ALJ has a duty to develop a full and fair record.

See Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d

731, 735 (11th Cir. 1981).  Thus, the refusal of an ALJ to permit a claimant to put on

corroborative evidence initially appears to run afoul of this duty, and in my mind can be a

quite serious matter.  However, this Circuit has held that a disability claimant's assertion that

he should have been permitted to produce lay testimony regarding the extent of his pain was

mooted where his claim failed for want of sufficient medical evidence.  See Landry, 782 F.2d

at 1554.  While I disapprove of the ALJ's decision not to allow more than a proffer of

Plaintiff's witnesses' testimony, because this claim also fails for want of sufficient medical

evidence, the ALJ's refusal to allow the testimony of Plaintiff's boyfriend and daughter does

not constitute reversible error.  See id.

Plaintiff's next two claims are related.  By her third claim, Plaintiff argues that the

ALJ's conclusion that she could do light exertional work[9] is unsupported by the substantial

evidence because it fails to take into account her inability to work on a regular and continuing

basis, that is, eight hours a day, five days a week.  In support thereof, Plaintiff faults the ALJ

for failing to consider her testimony that she left her previous employment many years ago

because she could not sustain such a regular and continuing work schedule and she points to

her testimony regarding her pain, inability to fully use her hands, and inability to lift, as well

as a "series of non-exertional limitations."  (Doc. 14 at 9).  By her fourth claim, Plaintiff

argues that the VE's testimony which properly assumed *all* her limitations dictates that the

case be reversed for an award of benefits.  Here, she cites the VE's testimony that if

Plaintiff's testimony was fully credited, she could not work at any job and his further

testimony that even if she could work at the light exertional level, if she missed three or more

days a month because of her condition, she would be unemployable.  Id. at 10.

Both of Plaintiff's arguments rest on the assumption that her testimony was fully

credible.  As set forth above, I find the ALJ appropriately discounted Plaintiff's claims of

disabling pain.  As a consequence, the ALJ was not obliged to incorporate Plaintiff's non-

credible subjective allegations or unsupported limitations into either his residual functional

---

[9]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  A person capable of doing light work is assumed capable of sedentary work as well.  20 C.F.R. § 416.967(b).

capacity determination or the hypothetical question posed to the VE.  See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001) (providing that an ALJ is not required to include in a hypothetical question those limitations he concludes are not credible); House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994) (same).  While it is true that Plaintiff made these claims, as discussed above, the medical record did not support the limitations to the degree claimed by the Plaintiff.  Because the Plaintiff's claims here each turn on accepting her testimony in full, something that the ALJ was not required to do in this case, the claims fail.

Finally, Plaintiff complains of the ALJ's failure to even mention the side-effects she suffered from her medication.  By this argument, the record supports that Plaintiff takes a number of medications and she testified that "she doesn't feel the same when she's on [it]." (Doc. 14 at 11).  Additionally, she contends the ALJ erred by not crediting her with any restrictions related to medication side-effects.  Id.

Upon review of Plaintiff's testimony and the medical record, I find Plaintiff is not entitled to relief on this claim.  Here, Plaintiff testified that she takes Lorcet, Xanax, Tegretol, and Prozac.  (R. 218).  She testified further that she does not always take the full dose of Prozac because she does not "like how they make her feel."  (R. 222).  However, beyond that general complaint, Plaintiff did not testify that she experienced any particular side-effects from her medication.[10]  Nor did Plaintiff testify to any resulting functional limitations

_____

[10]Although not raised on this appeal, in forms submitted to the administrative agency Plaintiff alleged on two occasions that Lorcet caused her drowsiness, and Prozac numbness/dizziness.  See (R. 67, 74).  Plaintiff did not mention these side effects at the hearing and neither the ALJ nor her counsel questioned her about them.  They are not addressed by the ALJ in the decision.  However, even assuming the ALJ erred, I find that any error on the part of the ALJ in failing to mention such was harmless because no functional

resulting from the same.  In the two-year period between Plaintiff's alleged (amended) onset date and the time of the administrative hearing, Plaintiff was seen by a treating physician on at least twenty occasions.  Notably, these records do not show that Plaintiff complained to her doctor of side effects and she received prescription refills at almost every appointment.  See (R. 180-201).  As such, the ALJ's implied determination that side effects did not present a significant work-related limitation is supported by substantial evidence, and under these circumstances, the ALJ cannot be severely faulted for not including a discussion of side effects in the decision or crediting Plaintiff with limitations related to such.  Cf. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (holding that an ALJ's determination that side effects from medications did not cause a claimant significant problems was supported by substantial evidence where the claimant testified at the hearing that her medication might be causing headaches, but the record demonstrated the several treating and examining physicians did not have any concerns about side effects of the claimant's medications).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further

---

limitations related to those side effects were claimed or proven by the Plaintiff.  The Eleventh Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in the decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  Thus, the mere failure to cite the statements in the administrative filings without more is no cause for a remand.

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
2nd day of August 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Susan C. Bucklew, United States District Judge
Counsel of Record